Johnson, J.
delivered the opinion of the Court.
The holder of a promissory note may maintain actions and recover judgments, both against the maker and the indorser; but there is no rule of law more universally admitted, and acted upon, than that he shall have only one satisfaction. If he make the money on execution, or receive it of one, the judgment against the other, except as to.the costs, is satisfied.
To shew the application of the rule to the case under consideration, and that it is decisive of the rights of these parties in the present controversy, it will be only necessary to state the facts, Mims, the bolder of a negotiable promissory note, had recovered separate judgments on the same note against Noonan the maker, and Jamison the indorser; and Jamison paid, and satisfied the judgment against himself. It would be difficult, it seems to me, to conceive of a case falling more directly within the rule. The judgment against Noonan, except as to costs, was therefore necessarily satisfied. But Jamison afterwards obtained an assignment of the judgment against Noonan from the attorney at law of the plaintiff; and the object of the present proceeding is to give effect to that assignment, as the means of indemnifying Jamison for the amount paid by him as indorser. Now if it be conceded, that the attorney had all the powers of his client over the judgment, yet *439 the assignment would be inoperative, because there was nothing upon which it could act, for under the rule before laid down it had been satisfied.
But if the judgment was unsatisfied, I should incline to think that the attorney had not the power to assign it, and that Jami-son could derive no interest in, or control over it, under -that assignment. Form'erly the agency of an attorney at law was limited to soliciting his client’s cause, and terminated on his obtaining the judgment of the Court: and his authority eveti to receive the money, from the officer who collected it, is of modern date, and has grown out of an usage founded in convenience, and sanctioned by universal consent. But he is forbidden to eompromit the cause of his client, by any composition, or contract, short of the actual receipt of his demand. 1 Besaus. 469. He cannot make a contract, in virtue of his powers as an attorney, which will bind his client.
To illustrate the principle, let us suppose that the judgment in question was in full force, and that the attorney, in consideration of the full amount paid by Jamison, had undertaken in the assignment to guaranty the payment; would his client have been hound by it"? Certainly not. It would have imposed on him a liability without his assent, and without consideration, as he was intitled to the money from Jamison, even without the assignment. Or if we suppose that Mims, who had recovered the judgment against Noonan, had been induced from motives of friendship or humanity to give him time for payment, in a manner so informal as not to impose a legal obligation, or that with this security he preferred that the money should remain in his hands to accumulate interest; would his attorney he permitted to say, that it should not be sol I will order the matter otherwise and transfer your powers to another? I think not. If it be a matter about which the attorney may contract, I see’no reason why he may not stipulate for any and every thing that he thinks proper. The power to contract, if it exists, must be general, for I know of no rule or principle which will restrain it.
It is said, that however true this may be, as between the attorney and the client, it cannot hold as to third persons. The attorney, as before shown, does not possess the power as incident to his agency as an attorney ; he stood therefore in relation, to this matter as a stranger. He eeald do nothing which could *440 bind his client, and could confer no right upon Jamison.
The convenience of this summary mode o.' proceeding to obtain a right, and to enforce what has been called a moral obligation, has been used in opposition to this motion and in support of the order made in the Circuit Court, hut it will be perceived from a little attention, tlmt it is fraught with much danger when applied indiscriminately, if a surety pay money for his principal, the latter is bound, m morality, and conscience, to make the most prompt and ample remuneration: but in laying down rules to enforce this obligation, we must take care that they do not operate unjustly against the principal. fl he rule which requires that the holder of a negotiable note shall give notice to the indorser of non-payment by the maker, was designed to enable the indorser to secure himself against loss, by obtaining funds or security from the maker. In relation to hills of exchange they are always supposed to be drawn on the faith of funds in the hands of the drawee. In these and many other cases which may well exist, the indorsor may be the real debtor; and the facts cannot be ascertained in any manner so conveniently and appropriately as in a suit between the immediate parties. This is the course universally pursued, and 1 am noi disposed to abandon it for one which is untried, and which might work injustice, although it may be more summary. Noonan, it is said, has removed out of the jurisdiction of the Court, but the fund sought to be recovered is here, and may be attached, and if that be inadequate, Jamison is only in the situation of ail other creditors, whose debtors have absconded, a case by no means uncommon.
Not to pass over entirely without notice the remaining question in this case, it will be sufficient to remark, that the rule laid down by the Court is, that when the sheriff collects money for one, against whom he has a ji.fa., the Court will not attach him if he retain the money so collected, and pay it over in satisfaction of the fi. fa.: so that on a question like this, it is unnecessary to inquire, whether either bank bills, or specie, are the subjects of levy.
Motion granted.